IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**UNITED STATES OF AMERICA**

vs.                                                                                        **CASE NO. 1:02CR38-MMP/AK**

**MAHMOUD ELDICK,**

       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Defendant's motion to vacate, set aside, or correct sentence with a supporting memorandum and affidavit. Docs. 182-184. The Government has filed an amended response, Doc. 192, and Defendant has submitted his reply. Doc. 194. This matter is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

Defendant was charged with one count of fraudulently obtaining money from health care programs by filing claims falsely representing that he was a licensed physician in Florida and one count of dispensing hydrocodone. Only the hydrocodone count is at issue in this proceeding.

As stated in the Indictment, Defendant was charged in Count Two with dispensing and causing to be dispensed "a quantity of hydrocodone, a Schedule III controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)." Doc. 15. This was in error either because (1) hydrocodone was misidentified as a Schedule III controlled substance, when it should have been listed as a Schedule I or II substance, or (2) the penalty provision, which covers offenses involving Schedule I and II controlled substances, was wrong and should have been stated as § 841(b)(1)(D). The ambiguity was important because Defendant was looking at either a 5-year maximum sentence (if hydrocodone is a Schedule III substance) or a 20-year maximum sentence (if it is a Schedule I or II substance).

On June 27, 2003, Defendant appeared before the Court for a change of plea. Immediately, the Government orally moved to amend the penalty provision of Count Two from § 841(b)(1)(C) to § 841(b)(1)(D), thereby setting the statutory maximum sentence on that count at 5 years imprisonment. Doc. 75. The Plea and Cooperation Agreement which Defendant signed reflected the change: "On Count Two, the defendant faces a maximum possible penalty of five years imprisonment...." Doc. 49. In the early stages of the colloquy, the Court, concerned about Defendant's hesitant responses, inquired:

>   THE COURT: Do you know why you are here this morning, Mr. Eldick?
>
>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: And you know that if I accept what you tell me and what the government can give me as a factual basis to support the matter which you are here pleading to, two felonies, that could send you to prison for ten years on one count and five years on another; do you understand that?
>
>   THE DEFENDANT: Yes, sir.

> THE COURT: All right. And do you have any problems today understanding what I'm telling you?
>
> THE DEFENDANT: No, sir.

Doc. 75 at 9.

In advising Defendant of the charges against him, the Court clarified that hydrocodone is a Schedule III controlled substance, and he directed the parties to correct the Plea Agreement to reflect that understanding. *Id*. at 16-17; *see also* Doc. 49. After the statement of facts was read into the record, the Court again advised Defendant that the "[m]aximum penalty that could be imposed as to the offense in Count II is five years of imprisonment...." Doc. 75 at 32. The Court questioned Defendant further:

> THE COURT: There is no mandatory minimum sentence prescribed by law for either of these offenses.
>
> But do you understand, sir, that by pleading guilty, you face...a maximum of five years imprisonment as to the offense in Count II?
>
> THE DEFENDANT: Yes, sir.

*Id*. Defendant then acknowledged that he had signed the Plea Agreement and that he fully understood all of its terms and conditions. *Id*. at 35. The Court again pointed out that the "plea agreement does provide that you would plead guilty to the offense in both Count I and II and that you do face the penalties that I have heretofore described and outlined to you in open court." *Id*. at 35-36. In response, Defendant acknowledged that he "underst[ood] and realize[d]...what [the Court] [had] told [him] about [his] plea agreement[.]" *Id*. at 37. The proceedings concluded with the following:

| | |
|---|---|
| THE COURT: | Now have you and your lawyers discussed this plea agreement and they explained to you in more detail than I have done all of its terms and conditions? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And has anyone made any promise to you, Mr. Eldick, other than those which are actually set forth in your written plea agreement that has in any induced you or led you to plead guilty to these charges? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Does the written plea agreement in fact contain every promise and every understanding that you have reached with the government and based upon the terms of which you are entering your guilty plea this morning? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Are there any secret or any undisclosed promises or inducements that have led you to plead guilty to these charges? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | And, by that, I mean neither your lawyer, the government or any other person has told you anything or has promised you anything that is contrary to the written terms of this agreement or is in addition to the written terms of this agreement that has in any way induced you or led you to plead guilty to these charges? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Has anyone used any type of threat, force, pressure, intimidation of any type to make you plead guilty? |
| THE DEFENDANT: | No, sir. |

* * *

| | |
|---|---|
| THE COURT: | Now have you had sufficient time to discuss your case fully with your lawyers and to explain to them everything you |

>                         know about the facts of the case as well as your
>                         involvement in the case?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:       And have you done so?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:       During these conferences with your lawyer or lawyers,
>                  have they generally answered what questions you may have
>                  and have they advised you where they think you may fall
>                  within the sentencing guidelines....
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:       And are you satisfied with your lawyers and the way that
>                  they have represented you in this case?
>
> THE DEFENDANT:   Yes, sir.

*Id*. at 42-43. Afterward, the Court found that Defendant understood the charges against him and the consequences of pleading guilty and that his plea was freely, voluntarily, and intelligently made. *Id*. at 44.

The Court later sentenced Defendant to 108 months on each count, to run consecutively. Docs. 65 & 67. Defendant appealed, and the Eleventh Circuit vacated the judgment and remanded for resentencing based on the fact that although the parties had stipulated in the Plea Agreement that hydrocodone was a "Schedule 3 opiate, which carried a five-year statutory maximum," Defendant had been erroneously sentenced on Count Two "as if the drug was a Schedule 2 opiate, which carries a 20-year statutory maximum." Doc. 99.

On re-sentencing, the Court sentenced Defendant to 120 months on Count One and 60 months on Count Two, to run consecutively. Docs. 130 & 140. Defendant again appealed the judgment. On appeal, he argued that the Court "was required to impose a sentence within the

guidelines range based upon language in his plea agreement," and that the consecutive statutory sentences were unreasonable in light of *Booker*. Doc. 174. The Eleventh Circuit rejected these arguments, concluding that "nothing in Eldick's plea agreement bound the district court or the government to a mandatory application of the guidelines, the district court correctly calculated the guidelines range, and the court's decision to sentence above that range was supported by the record and did not result in an unreasonable sentence." *Id*. It therefore affirmed the judgment.

The instant motion to vacate followed. On this occasion, Defendant makes one claim, namely, that counsel rendered ineffective assistance "when [they] failed to prepare by not reviewing the charged offense in Count Two of the indictment and by misleading [Defendant] into provided a plea of guilty under the misleading position that Count Two carried a statutory maximum sentence of 20 years." Doc. 182. In his affidavit, Defendant states that he did not know he was facing only a 5-year sentence on Count Two "until right before the Change of Plea hearing and after I had already debriefed the Government," and that if he had known that the statutory maximum was 5 years, not 20 years, he "would have never debriefed the Government" and would not have pled guilty to Count Two. Doc. 184.

In response, the Government has submitted the affidavit of one of Defendant's attorneys, Fred Haddad. According to Mr. Haddad, he explained to Defendant and discussed with co-counsel that "Count Two of the Indictment sounding in hydrocodone could be listed as a Schedule III substance as well as a Schedule II substance which would make the count a five year statutory maximum as opposed to a twenty year maximum that this is generally charged, and would in fact reduce exposure by fifteen years if we could [convince] the prosecutor he in fact charged a Schedule III violation." Doc. 192, Ex. 1. He further states that he "suggested that

we probably ought not to raise the issue until such time as most advantageous so that the Government could not supersede and clarify the Indictment," and that Defendant was aware of this strategy. *Id*. Haddad also maintains that after reviewing the discovery, he concluded that the case was not "reasonably triable to a jury on the facts," as (1) Defendant had engaged in similar identity theft in the past, for which he had been convicted, (2) the patients he had treated would be viewed sympathetically by a jury, and (3) his Middle Eastern descent could be difficult to handle before a jury given the circumstances of "posing as a doctor obtaining medicare monies and distributing drugs as well as the alleged failed diagnoses which allegedly resulted in deaths and/or serious injury." *Id*. He indicates that a plea was further in Defendant's best interests since it minimized the chances that he would be prosecuted either in the Middle District of Florida, where the majority of the underlying acts actually occurred, or in state court, and it allowed for Defendant to attempt cooperation with other investigations, thereby opening up the possibility of a downward departure. *Id*.

In his reply, Defendant maintains that at the time he "debrief[ed]" law enforcement, thereby waiving "any possible defense to the instant case," he had been told he was facing a 20-year sentence, and he again claims that he would not have met with law enforcement or pled guilty to Count Two if he had known that he was facing only a 5-year sentence. Doc. 194. According to Defendant, hydrocodone "will always carry a five-year statutory maximum since the drug has a medical purpose," and that counsel's suggestion that Count Two was not triable is without merit, as the jury, "for some unknown reason," could have "very easily" acquitted him on the distribution count.

**DISCUSSION**

The only issue in this case is whether counsel acted ineffectively; therefore, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonable could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent

record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the

outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

Having carefully considered the matter, the Court finds that Defendant's allegations are without merit. It is absolutely appropriate for counsel to explain the reasoning behind his decision not to tell the Government that it had made an error in the Indictment until the day of the plea and to shed light on the thought process behind recommending that his client plead and cooperate, rather than go to trial. Defendant is in error when he asserts that hydrocodone can never be charged as a Schedule II offense simply because it has a medical purpose, *see* http://www.deadiversion.usdoj.gov/drugs_concern/hydrocodone/hydrocodone.htm, and if Mr. Haddad had tipped his hand on the error before the plea deal was struck, the Government most certainly would have moved to amend the Indictment to correct a scrivener's error or would have superseded the indictment by presenting it again to the grand jury with the corrected drug scheduling, thereby exposing Defendant to the 20-year sentence. As to his claim that he "debriefed" the Government while under the impression that he was facing 20 years imprisonment on Count Two, it is specious at best since, on the day the search warrant was executed on Defendant for his clinic and pharmacy, he met with an FBI special agent and

confessed to him that he had fraudulently obtained a medical license and a DEA registration to dispense controlled substances. Presentence Report at ¶¶ 26 & 28. This occurred approximately one month before Defendant was indicted, i.e., before the error had even been made and before Defendant could have been erroneously advised by counsel as to the penalties. *Id*.

Be that as it may, at the time that Defendant entered his plea, he knew he was facing a 5-year maximum sentence, and he went forward with the plea anyway. He clearly acknowledged during the hearing (1) that he knew the penalty for Count Two was 5 years, (2) that he had discussed that fact and also the pros and cons of going to trial with his counsel, and (3) that he knew that by pleading guilty he was giving up any defenses he might have to the charges. The law is well established that a "guilty plea means something. It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998). In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). For Defendant now to claim that he did not know **before the plea hearing began** that he was facing only 5 years on the drug count is flatly and unequivocally belied by the plea transcript itself which begins with the Court asking counsel for the Government, "How did you resolve it, Mr. Sanford," to which counsel responded, "[As to] Count II of the Indictment...I would orally amend...the penalty provision." Therefore, his contentions to the contrary are "wholly incredible."

The Court does not find anything deficient in counsel's performance, and therefore, Defendant's claim of ineffectiveness fails.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, set aside, or correct sentence, Doc. 182, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 31st day of August, 2009.

s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**